IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JAMES RICE,

      Plaintiff,

v.                                                                   CIVIL ACTION NO.: 2:23-cv-00629
                                                                     The Honorable Joseph R. Goodwin

MINGO LOGAN COAL, LLC,

      Defendant.

## PLAINTIFF AND DEFENDANT'S INTEGRATED PRE-TRIAL MEMORANDUM

NOW COME the Plaintiff, by and through counsel, Warner Law Offices, PLLC, Robert B. Warner and Andrew D. Byrd, and the Defendant, Mingo Logan Coal, LLC, by and through counsel, Steptoe & Johnson PLLC, Michael J. Moore and Bryan R. Cokeley pursuant to the Court's July 15, 2026, *Order Granting Joint Motion to Continue Pretrial Conference* and Rule 16.7(b) of the Local Rules of Civil Procedure, and hereby submit the following:

1.      **Rule 26(a)(3) Disclosures and Objections**

      A.      **Plaintiff's Rule 26(a)(3) Disclosures**

### PRELIMINARY STATEMENT

The information disclosed is based upon matters currently known to the Plaintiff and his counsel, in a good faith effort to comply with the requirements and spirit of Rule 26(a)(3). Each disclosure is made subject to any and all objections which may be asserted pursuant to the Federal Rules of Evidence, which Plaintiff reserves. Plaintiff generally asserts the attorney-client privilege and the protection of the work-product privilege for any and all disclosures and documents subject to those respective privileges. To the extent any disclosures may be subject to these privileges, no waiver is intended. Plaintiff reserves the right to supplement these disclosures.

31861585.1

**(i)    The name and, if not previously provided, the address and telephone number of each witness — separately identifying those the party expects to present and those it may call if the need arises.**

The Plaintiff expects to present the following witnesses at trial:

(1)    James Rice, Plaintiff
c/o Warner Law Offices, PLLC

(2)    Kaitlyn Rice, wife of Plaintiff
c/o Warner Law Offices, PLLC

(3)    Cody Badgett
c/o Steptoe & Johnson, PLLC

(4)    James Eric Plymale
234 Slippery Rock
Man, West Virginia 25635

(5)    David Marcum
P.O. Box 112
Kistler, West Virginia 25628

(6)    John Dillon
49 Cedarwood Drive
Delbarton, West Virginia 25670

(7)    Charles Michael Ferrell
477 Kingswood Drive
Culloden, West Virginia 25510

(8)    Kyle Brown
c/o Steptoe & Johnson, PLLC

(9)    Jerry Mann
c/o Steptoe & Johnson, PLLC

(10)   Justin Bourne
c/o Steptoe & Johnson, PLLC

(11)   Jack Spadaro
P.O. Box 442
Hamlin, West Virginia 25523

(12)   Syam B. Stoll, M.D.
1412 6th Avenue

2

31861585.1

Huntington, West Virginia 25701
(304) 523-8263

(13)    Krista Ulisse, D.O.
Chestnut Ridge Center
930 Chestnut Ridge Road
Morgantown, West Virginia 26505
(304) 293-3331

(14)    Travis Blanton, M.D.
Logan Regional Medical Center
77 Hospital Drive
Logan, West Virginia 25601
(304) 831-1674

(15)    Robert McCleary, D.O.
Logan Regional Orthopedics and Associates
20 Hospital Drive
Logan, West Virginia 25601
(304) 831-1818

(16)    Drew Barzman, M.D.
3718 Carpenters Creek Drive
Cincinnati, OH  45241

(17)    Nadine Taniguchi, RN, BSN, CCM, PAHM, CNLCP
Certified Life Care Planner
Nadene Taniguichi, RN, LLC
52 Parvins Mill Road
Bridgeton, NJ 08302

(18)    Daniel C. Baierl, M.S., CLCP, ABVE/F
Horizon Vocational Services
462 Adele Drive, Suite 101
Irwin, PA  15642-0389

(19)    Daniel L. Selby, MBA, CPA, CFF, CVA, ABV, CFF
Selby & Associates, PLLC
218 6th Ave.
St. Albans, WV  25177

The Plaintiff expects to present the following witnesses at trial if the need arises:

(1)    Scott Orthopedic
2828 1st Avenue Suite 400
Huntington, WV 25702

3

- Luis E Bolano, MD

(2) Mingo Logan Area Mental Health d/b/a Mountain Laurel Integrated Healthcare
174 LMAMH Center Road
Logan, WV 25601

- Jennifer May, NP and/or Amber Clay, counseling and/or Sharon Jeffries

The Plaintiff reserves the right to call as a witness any witness identified by the other party to this action.  The Plaintiff further reserves the right to call any witness whose testimony may become necessary depending upon the evidence presented at the trial of this action.  The Plaintiff also reserves the right to call as a witness any witness whose testimony may become necessary depending upon the Court's rulings on pending motions as well as its rulings upon anticipated motions *in limine*.

Additionally, the Plaintiff may present the following witnesses at trial by way of a video evidentiary deposition or live video testimony if the need arises prior thereto:

(1) Syam B. Stoll, M.D.

(2) Krista Ulisse, D.O.

(3) Travis Blanton, M.D.

(4) Robert McCleary, D.O.

(5) Drew Barzman, M.D.

(6) Nadine Taniguchi, RN, BSN, CCM, PAHM, CNLCP

(7) Daniel C. Baierl, M.S., CLCP, ABVE/F

(8) Daniel L. Selby, MBA, CPA, CFF, CVA, ABV, CFF

(9) Any other witness listed in part (i) of this disclosure should the need arise.

4

31861585.1

**(ii)** **The designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition.**

At this time, Plaintiff expects to present the video deposition of Charles Michael Ferrell at trial unless he is capable to attend in person. Other than Mr. Ferrell's video deposition, Plaintiff does not anticipate presenting the testimony of any other person by deposition other than those set forth above in part (i) if the need arrives.  Plaintiff reserves the right to amend these disclosures following communications with counsel for Defendant as to which witnesses, if any, Defendant will produce at trial, which may be subject to subpoena, and whether a witness is subject to subpoena, or not.

**(iii)** **The identification of each document or other exhibit, including summaries of other evidence — separately identifying those items the party expects to offer and those it may offer if the need arises.**

The Plaintiff expects to offer the following exhibits at the trial of this action:

(1)     The medical records for James Rice from the following health care providers:

- Logan County Emergency Ambulance Authority (L.E.A.S.A.)
- Logan Regional Medical Center
- Logan Regional Orthopedics and Associates
- St. Mary's Medical Center
- Radiology, Inc.
- Brookeview Physical Therapy
- Health Care Alliance, Inc.
- Three Gables Surgery Center
- River Cities Anesthesia, PLLC
- Mingo Logan Area Mental Health d/b/a Mountain Laurel Integrated Healthcare
- Logan Physical Therapy
- Scott Orthopedic Center
- Southern West Virgina Physical Therapy
- M&G Neurophysiology
- Williamson Health and Wellness

(2)     The medical bills for James Rice from the following health care providers:

- Logan County Emergency Ambulance Authority (L.E.A.S.A.)

31861585.1

- Logan Regional Medical Center
- Logan Regional Orthopedics and Associates
- St. Mary's Medical Center
- Radiology, Inc.
- Brookeview Physical Therapy
- Health Care Alliance, Inc.
- Three Gables Surgery Center
- River Cities Anesthesia, PLLC
- Mingo Logan Area Mental Health d/b/a Mountain Laurel Integrated Healthcare
- Logan Physical Therapy
- Scott Orthopedic Center
- Southern West Virgina Physical Therapy
- M&G Neurophysiology
- Williamson Health and Wellness

(3)    The Expert Report of Jack Spadaro and the references cited therein.

(4)    The Expert Report of Daniel L. Selby and the references cited therein.

(5)    The Expert Report of Daniel C. Baierl and the references cited therein.

(6)    The Expert Report of Nadene Taniguchi and the references cited therein.

(7)    The Expert Report of Drew H. Barzman and the references cited therein.

(8)    Photographs of James Rice injury.

(9)    Mine Accident and Injury Report (WVOMHST)

(10)    Supervisors Initial Report of an Incident (Arch-Mountain Laurel)

(11)    Mine Accident, Injury and Illness Report (7000-1)

(12)    Injury Alert (Arch-Mountain Laurel)

(13)    Notes and photographs of Andrew Bell.

(14)    May 11, 2021 MSHA Citation

(15)    Diagram of Incident Location (MLC-Core)

(16)    Relevant portions of Pre-Shift / On-Shift and Daily Reports

(17)    Relevant portions of MTNL Examinations of Belt Conveyors

6

(18)    James Rice's workers' compensation file, which includes but is not limited to, Independent Medical Examination reports and impairment ratings.

(19)    A chronology of Plaintiff's medical treatment and a summary of Plaintiff's medical bills.

(20)    The documents offered at the depositions in this matter.

The Plaintiff may offer the following exhibits at the trial of this action if the need arises:

(1)    The discovery answers and responses of the Plaintiff and Defendant and the documents produced therein.

(2)    Certain documents contained in the FOIA responses received from the WVOMHST and MSHA in this matter; including but not limited to other citations issued to the Defendant by federal and state agencies.

(3)    Cutting and Welding Log

(4)    Dispatcher's Log

Other evidence:

(1)    A depiction, animation or rendering of the operations at the mine at the time of the incident, incident scene, apparatus involved in the subject incident and mechanism of injury.

The Plaintiff reserves the right to utilize as an exhibit any exhibit identified by the Defendant. The Plaintiff further reserves the right to utilize any exhibits that may become necessary depending upon the evidence presented at the trial of this action.  The Plaintiff also reserves the right to utilize any exhibit that may become necessary depending upon the Court's rulings on pending motions as well as its rulings upon anticipated motions *in limine*.

31861585.1

**B.**     **Defendant's Rule 26(a)(3) Disclosures**

**(i)**     **The name and, if not previously provided, the address and telephone number of each witness — separately identifying those the party expects to present and those it may call if the need arises.**

The Defendant expects to present the following witnesses at trial:

(1)     Plaintiff James Rice
c/o Warner Law Offices, PLLC

(2)     Kaitlyn Rice
c/o Warner Law Offices, PLLC

(3)     Cody Badgett
P.O. Box 418
Verdunville, West Virginia 25649
304-687-0340

(4)     Justin Bourne
c/o the undersigned counsel

(5)     John Dillon
49 Cedarwood Drive
Delbarton, West Virginia 25670
304-426-4355

(6)     Mike Ferrell
477 Kingswood Drive
Culloden, West Virginia 25510
304-397-6383

(7)     Jerry Mann
c/o the undersigned counsel

(8)     David Marcum
P.O. Box 112
Kistler, West Virginia 25628
304-583-7033

(9)     Gary M. Hartsog
216 Business Street
Beckley, West Virginia 25801
304-255-4131

8

31861585.1

The Defendant expects to present the following witnesses at trial if the need arises:

(1) Eric Plymale
234 Slippery Rock Lane
Man, West Virginia 25635
304-583-5458

(2) Ryan Blackburn
356 Isom Branch Road
Lake, West Virginia 25121
304-784-7829

(3) Kyle Brown
c/o the undersigned counsel

(4) Todd Collins
739 Shilo Colebank Road
Moatsville, West Virginia 26405
304-931-1221/304-426-6223

(5) Aaron Copley
P.O. Box 521
Delbarton, West Virginia 25670
304-688-3914

(6) Joe Decker
P.O. Box 701
Holden, West Virginia 25625
304-239-6165

(7) Howard Dingess
354 Quarry Hills Road
Harts, West Virginia 25524
304-855-3085

(8) Jamie Hatfield
12 Prock Murphy Road
Belfry, KY 41514
606-603-0053

(9) Jon Hensley
c/o undersigned counsel

(10) Dr. Nicholas Jasinski
930 Chestnut Ridge Road
Morgantown, West Virginia 26505

31861585.1

304-598-6400

(11)    Mark Kimler
        7004 Buckhannon Road
        Volga, West Virginia 26238

(12)    Dr. Robert McCleary
        79 Hospital Drive
        Logan, West Virginia 25601
        304-831-1818

(13)    Dr. Syam B. Stoll
        1412 Sixth Avenue
        Huntington, West Virginia 25701
        304-523-8263

(14)    Dr. Krista Ulisse
        930 Chestnut Ridge Road
        Morgantown, West Virginia 26505
        304-598-6400

(15)    Jennifer May, NP and/or Amber Clay, LPC and/or Sharon Jeffrey, MSW, LGSW
        Mingo Logan Area Mental Health d/b/a Mountain Laurel Integrated Healthcare
        174 LMAMH Center Road
        Logan, WV 25601

(16)    Travis Blanton, M.D.
        Logan Regional Medical Center
        77 Hospital Drive
        Logan, West Virginia 25601
        304-831-1674

The Defendant reserves the right to call any and all individuals identified in the course of discovery, any and all individuals identified by other parties in this action, and any rebuttal witnesses. The Defendant further reserves the right to supplement this list based upon rulings of the Court on pending motions and other pre-trial activities. Moreover, Defendant reserves the right to offer expert and/or lay testimony on the amount of the worker's compensation offset if the parties are unable to reach agreement on a stipulation.

10

31861585.1

**B) The designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition.**

At this time, the Defendant does not anticipate presenting the testimony of any person by deposition.

**C) The identification of each document or other exhibit, including summaries of other evidence — separately identifying those items the party expects to offer and those it may offer if the need arises.**

The Defendant expects to offer the following exhibits at the trial of this action:

(1)   Expert report of Gary Hartsog, along with documentation referenced in or relied upon in his report to the extent necessary to provide appropriate context to the jury;

(2)   Documentation to demonstrate the payments made by Mingo Logan's workers' compensation carrier for purposes of establishing Mingo Logan's offset at trial;

(3)   Initial Report of an Incident involving Plaintiff James Rice, Bates Numbered documents "Mingo Logan - Rice 00001" to "Mingo Logan - Rice 00002";

(4)   Mine Accident and Injury Report for WVOMHST, Bates Numbered Documents "Mingo Logan - Rice 00003" to "Mingo Logan - Rice 00004";

(5)   Mine Accident Report, 7000-1, Bates Numbered documents "Mingo Logan – Rice 00005" to "Mingo Logan – Rice  00006";

(6)   West Virginia Workers' Compensation Employees' and Physicians' Report of Occupational Injury or Disease, Bates Numbered document "Mingo Logan – Rice 00007";

(7)   Injury Alert Report, Bates Numbered document "Mingo Logan – Rice 00008";

(8)   MSHA inspector notes from investigation of Plaintiff James Rice accident, Bates Numbered documents "Mingo Logan – Rice 00023" to "Mingo Logan – Rice 00025", "Mingo Logan – Rice 00030", and "Mingo Logan – Rice 00032" to "Mingo Logan – Rice 00039";

(9)   MSHA citation written to Mingo Logan regarding accident involving Plaintiff James Rice, Bates Numbered documents "Mingo Logan – Rice 00040" to "Mingo Logan – Rice 00043";

11

(10)   Mingo Logan Employee Handbook, Bates Numbered documents "Mingo Logan – Rice 00882 to Mingo Logan Rice – 00896";

(11)   Roof control plan in effect on the date of Plaintiff James Rice's accident, Bates Numbered documents "Mingo Logan – Rice 01207" to "Mingo Logan – Rice 01245";

(12)   Examination of belt conveyor, Bates Numbered document "Mingo Logan – Rice 01300"; and

(13)   Preshift-Mine Examiner's Report / Daily and Onshift Report, Bates numbered document "Mingo Logan – Rice 01431."

The Defendant may offer the following exhibits at the trial of this action if the need arises:

(1)   Independent Medical Examination of Dr. Syam B. Stoll, along with documentation referenced in or relied upon in his Independent Medical Examination of Plaintiff James Rice;

(2)   Psychiatric Independent Medical Examination Report of Dr. Ulisse, along with documentation referenced in or relied upon in her Independent Medical Examination of Plaintiff James Rice;

(3)   Map depicting area of accident, Bates Numbered document "Mingo Logan – Rice 00044";

(4)   Plaintiff James Rice applications for employment from 2011 and 2018, Bates Numbered documents "Mingo Logan - Rice 00288 to Mingo Logan - Rice 00326";

(5)   Plaintiff James Rice's full duty release to return to work, Bates Numbered document "Mingo Logan - Rice 00335";

(6)   Plaintiff James Rice's training record, Bates Numbered documents "Mingo Logan – Rice 00336" to "Mingo Logan – Rice 00355";

(7)   All citations written by MSHA for two years prior to the accident of Plaintiff James Rice involving unsafe conditions surrounding belt conveyors and/or section feeders, Bates Numbered documents "Mingo Logan – Rice 00828" to "Mingo Logan – Rice 00881";

(8)   Plaintiff James Rice's employee handbook acknowledgment, Bates Numbered document "Mingo Logan – Rice 00911";

(9)     "Near Miss" and "At Risk" documented comments from employees, Bates Numbered documents "Mingo Logan - Rice 00943" to "Mingo Logan - Rice 01197";

(10)    Pre-Shift/Onshift & Daily Report (5/6/21-5/16/21), Bates Numbered documents "Mingo Logan – Rice 01418" to "Mingo Logan – Rice 01446";

(11)    Examinations of Belt Conveyors (4/21/21-5/17/21), Bates Numbered documents "Mingo Logan - Rice 01447" to "Mingo Logan - Rice 01547";

(12)    Cutting and Welding Examination Book, Bates Numbered documents "Mingo Logan – Rice 03303" to "Mingo Logan – Rice 03305";

(13)    A depiction, animation or rendering of the operations at the mine at the time of the incident, incident scene, apparatus involved in the subject incident and mechanism of injury.

Mingo Logan reserves the right to introduce any other document that has been produced in this case by any party.

### D)  Objection to Defendant's list of exhibits

(1) At this time and until an agreement can be reached by the parties, Plaintiff objects to the method or documentary evidence to support any workers' compensation offset in this matter.

### E)  Objections to Plaintiff's list of witnesses and exhibits

(1) Defendant objects to the introduction as exhibits of Plaintiff's expert reports for witnesses Jack Spadaro, Nadene Taniguchi, Daniel Selby, Daniel Baierl, and Drew Barzman. Defendant recognizes that Plaintiff may show documents relied upon by the experts during the presentation of evidence in this case, but the reports should not be introduced as exhibits or provided to the jury during deliberations.

(2) Defendant objects to the introduction of MSHA documents, including citations, as exhibits in this action unless MSHA presents a witness to testify regarding the process undertaken to prepare those documents and be subject to cross-examination in this matter.

13

31861585.1

(3) Defendant does not object to any of the witnesses identified by Plaintiff.

**2.    Contested Issues of Law Requiring Ruling Before Trial**

  **A.    Plaintiff's Contested Issues of Law**

Plaintiff believes that the parties are in agreement as to the applicable law, that being West Virginia Code § 23-4-2(d)(2)(B)(i)-(v) [2015] also known as West Virginia's "deliberate intent" statute. As set forth below in Section 5, the parties do perceive that there are contested issues of fact and of law to be decided by this Honorable Court prior to trial.

  **B.    Defendant's Contested Issues of Law**

Mingo Logan and Plaintiff each filed a motion for summary judgment, and those motions are now fully briefed and require rulings before trial.

Additionally, Mingo Logan has submitted motions *in limine*, in which it seeks rulings on the following issues of law before trial:

1.    Whether Plaintiff's counsel may ask leading questions of Plaintiff at trial; whether Plaintiff's deposition testimony, which contradicted much of his earlier testimony and was given in response to a series of leading questions by his counsel, is admissible; and whether such deposition testimony should be struck from the record.

2.    Whether Plaintiff; his counsel; and his liability expert, Jack Spadaro, should be precluded from testifying or arguing that Michael Ferrell told Justin Bourne anything that gave him "actual knowledge" of the specific condition that injured Plaintiff.

3.    Whether Plaintiff and his counsel should be precluded from offering testimony or argument regarding an alleged conversation Plaintiff and Ferrell had in 2022 related to Plaintiff's injury.

4.    Whether Plaintiff and his counsel should be precluded from testifying and arguing that Justin Bourne had any concern other than spillage before Plaintiff's injury.

5.    Whether Plaintiff's liability expert, Jack Spadaro, should be precluded from offering opinions other than those contained in his disclosed expert report and also from offering opinions regarding violations of statutes, regulations, and standards when those alleged violations cannot support Plaintiff's claim.

6. Whether Plaintiff's counsel should be precluded from arguing that no pre-shift or on-shift examination took place on the day of Plaintiff's injury and whether Plaintiff's liability expert, Jack Spadaro, should be precluded from testifying that any statute, regulation, rule, or standard was violated because no pre-shift or on-shift examination took place.

7. Whether Plaintiff's liability expert, Jack Spadaro, should be precluded from testifying that Plaintiff's supervisor, Justin Bourne, violated a statute, regulation, rule or standard when he turned on the feeder to troubleshoot the spillage issue, and whether Plaintiff's counsel should be precluded from making an argument along the same lines.

8. Whether Plaintiff; Plaintiff's counsel; and Plaintiff's liability expert, Jack Spadaro, should be precluded from testifying or arguing that Plaintiff's supervisor, Justin Bourne, had actual knowledge of the condition that injured Plaintiff by virtue of a citation that was issued to Mingo Logan on November 21, 2019.

9. Whether Plaintiff; Plaintiff's liability expert, Jack Spadaro; and Plaintiff's counsel should be precluded from testifying or arguing that the mine was running coal or that the feeder was in service at the time of Plaintiff's injury.

10. Whether Plaintiff's counsel should be precluded from arguing that Mingo Logan can be liable for deliberate intention based on conduct that was less than intentional, such as reckless conduct.

11. Whether Plaintiff's counsel should be precluded from asking questions of witnesses that contain legal terms of art, and whether Plaintiff's liability expert, Jack Spadaro, should be precluded from offering testimony that states any legal conclusion.

12. Whether Plaintiff should be precluded from testifying as to the motivation or thought process of his supervisor, Justin Bourne, or of Mingo Logan.

13. Whether Plaintiff's counsel should be precluded from asking questions of witnesses regarding whether an Emergency Medical Technician was present where and when Plaintiff was injured.

14. Whether testimony regarding whether, when, and how Mingo Logan investigated Plaintiff's accident should be excluded, as well as related argument by Plaintiff's counsel.

15. Whether Plaintiff may rely on an alleged violation of 30 C.F.R. §75.1725(a) to satisfy the third element of his claim, including through testimony or argument of counsel.

15

**3.      Brief Statement of the Essential Elements of the Claim and Relief Sought**

**A.      Plaintiff's Brief Statement**

In this case, the Plaintiff has brought a "deliberate intent" claim against the Defendant pursuant to West Virginia Code § 23-4-2(d)(2)(B)(i)-(v) [2015]. In order to prevail under West Virginia Code § 23-4-2(d)(2)(B)(i)-(v), a plaintiff must prove as follows:

**(i)** That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

**(ii)** That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

(I) In every case actual knowledge must specifically be proven by the employee or other person(s) seeking to recover under this section, and shall not be deemed or presumed: Provided, That actual knowledge may be shown by evidence of intentional and deliberate failure to conduct an inspection, audit or assessment required by state or federal statute or regulation and such inspection, audit or assessment is specifically intended to identify each alleged specific unsafe working condition.

(II) Actual knowledge is not established by proof of what an employee's immediate supervisor or management personnel should have known had they exercised reasonable care or been more diligent.

(III) Any proof of the immediate supervisor or management personnel's knowledge of prior accidents, near misses, safety complaints or citations from regulatory agencies must be proven by documentary or other credible evidence.

16

31861585.1

**(iii)** That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer.

(I) If the specific unsafe working condition relates to a violation of a commonly accepted and well known safety standard within the industry or business of the employer, that safety standard must be a consensus written rule or standard promulgated by the industry or business of the employer, such as an organization comprised of industry members: Provided, That the National Fire Protection Association Codes and Standards or any other industry standards for Volunteer Fire Departments shall not be cited as an industry standard for Volunteer Fire Departments, Municipal Fire Departments and Emergency Medical Response Personnel as an unsafe working condition as long as the Volunteer Fire Departments, Municipal Fire Departments and the Emergency Medical Response Personnel have followed the Rules that have been promulgated by the Fire Commission.

(II) If the specific unsafe working condition relates to a violation of a state or federal safety statute, rule or regulation that statute, rule or regulation:

(a) Must be specifically applicable to the work and working condition involved as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(b) Must be intended to address the specific hazard(s) presented by the alleged specific unsafe working condition; and,

17

(c) The applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination.

**(iv)** That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

**(v)** That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition. For the purposes of this section, serious compensable injury may only be established by one of the following four methods:

(I) It is shown that the injury, independent of any preexisting impairment:

(a) Results in a permanent physical or combination of physical and psychological injury rated at a total whole person impairment level of at least thirteen percent (13%) as a final award in the employees workers' compensation claim; and

(b) Is a personal injury which causes permanent serious disfigurement, causes permanent loss or significant impairment of function of any bodily organ or system, or results in objectively verifiable bilateral or multi-level dermatomal radiculopathy; and is not a physical injury that has no objective medical evidence to support a diagnosis.

Plaintiff seeks damages for any and all economic damages incurred in excess of those received or receivable in Plaintiff's worker's compensation claim including but not limited to past and future medical expenses, past and future lost wages, and loss of household services. Plaintiff

31861585.1

further seeks damages for past and future general damages including but not limited to amounts for pain and suffering, emotional distress, annoyance and inconvenience, humiliation and embarrassment.

### B.      Defendant's Brief Statement

Mingo Logan defends against Plaintiff's claim on the following bases:

I.      Mingo Logan is entitled to employers' immunity under the Workers' Compensation Act because Plaintiff has failed to prove the elements of his deliberate intention claim, which (in sum) are:

   (i)      That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

   (ii)      That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

. . .

   (iii)      That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer.

. . .

   (iv)       That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

   (v)      That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2-(d)(2)(B) (setting forth the elements of the claim); *see* W. Va. Code § 23-2-6 (providing for employer immunity).

II.      Plaintiff has failed to mitigate his past and future lost wages despite a statutory duty to do so. *See* W. Va. Code § 55-7E-3.

31861585.1

III.      Plaintiff has comparative fault, which reduces or bars Plaintiff's recovery of damages. *See* W. Va. Code § 55-7-13a, -13b, -13c, -13d; *Looney v. Appalachian Power Co.*, No. CV 3:24-0467, 2026 WL 893182, at *2 n.1 (S.D.W. Va. Apr. 1, 2026) (comparative fault statute applies to deliberate intention claims); *Woodford v. Arch Coal, Inc.*, Civil Action No. 2:21-CV-02, 2022 WL 2961573, at *3, 2022 U.S. Dist. LEXIS 132832, at *7 (N.D.W. Va. July 26, 2022) (same).

IV.      Mingo Logan is entitled to an offset for any workers' compensation benefits Plaintiff has received related to his injury. *See* W. Va. Code § 23-4-2(c).

**4.     Brief Summary of the Material Facts and Theories of Liability**

     **A.     Plaintiff's Brief Summary**

This case arises from a workplace injury that occurred on May 11, 2021, resulting in serious injuries to the Plaintiff. Plaintiff was employed by the Defendant as an electrician at Defendant's Mountaineer II Mine in Logan, West Virginia. As part of Plaintiff's job duties, he was directed by his immediate supervisor (Justin Bourne) to observe the belt conveyor and feeder on the section where he was working. While the Plaintiff was observing the belt conveyor and feeder, a structural failure occurred. This resulted in metal parts launching with extreme force towards the Plaintiff and crashing against him. As a result, Plaintiff suffered severe and permanent physical injuries to his left arm, as well as permanent mental injuries.

Prior to the incident, Plaintiff's immediate supervisor/Defendant's section foreman (Justin Bourne) had the responsibility to ensure the feeder and belt were examined and set properly *before* his crew ran coal on the day of the subject incident. Mr. Bourne was to receive a pre-shift examination report from the previous section foreman. Any information received on hazards would then need to be addressed when Mr. Bourne performed his own on-shift examination prior to his crew starting work. During his on-shift examination, Justin Bourne is required to examine the belt and feeder. The on-shift examination determines if there are unsafe conditions involved with the belt conveyor and feeder. Mr. Bourne knew that running a feeder and belt that are not in a condition to be run in

31861585.1

accordance with MSHA or WVOMHST laws can create an unsafe condition that can lead to someone being injured or killed. If Justin Bourne discovered that the feeder was not in a condition to be run due to a concern, it should not be run until it has been corrected or deemed safe to operate.

During the pre-shift examination, the section foreman on the previous shift (Charles Michael Ferrell) reported to Justin Bourne that the feeder and belt were not ready to run coal. A shuttle car operator (Eric Plymale) also confirmed that the crew knew before going underground that the feeder needed to be reset and that Justin Bourne received this information during the pre-shift meeting. Despite receiving information during the pre-shift examination that the feeder and belt conveyor were not ready to run coal, Justin Bourne disregarded his own on-shift examination of the belt conveyor and feeder and directed his crew to run coal. The belt examiner (John Dillon), two shuttle car operators (Eric Plymale and Cody Badgett), and a scoop operator (David Marcum) ran multiple loads of coal and materials through the feeder prior to Plaintiff's incident.

While running coal, Mr. Bourne knew that the condition of the belt conveyor and feeder needed addressed by an electrician. Mr. Bourne was not comfortable with running the belt conveyor and feeder. Mr. Bourne determined he could not run the feeder and belt conveyor, and summoned the Plaintiff to examine it. At this point, the crew had been running coal through the feeder and belt for 15-20 minutes. Upon arrival, Mr. Bourne allowed the feeder and belt conveyor to run while the Plaintiff was standing beside it, resulting in the subject incident and serious injuries to the Plaintiff.

Following Plaintiff's serious injuries, MSHA issued a citation to the Defendant for failing to maintain the belt conveyor and feeder in a safe operating condition in violation of 30 C.F.R. §75.1725(a). The MSHA Inspector noted a "metal rock box…was modified to allow placement of the feeder…[t]wo main I beams and several metal rails were cut out, and a piece of sheet metal attached to a skirt board was [*sic*] tack welded to the structure and [*sic*] was installed in its stead"

31861585.1

and "[t]he operator had reason to know that the tack welds were not significant enough to withstand the force of the material being dumped onto it, but there was two pieces of metal rail tacked to the belt rail structure….[t]he operator should have known two belt rails tacked to the structure would not be equivalent to the two I beams that were cut out."

Though the Defendant was not cited for it, federal and state laws enforced and administered by MSHA and WVOMHST required Justin Bourne to adequately and properly conduct a pre-shift examination (30 C.F.R. §75.360/W.Va. Code § 22A-2-13) and on-shift examination (30 C.F.R. §75.362/W.Va. Code § 22A-2-14) to ensure the feeder and belt were in a safe operating condition (30 C.F.R. §75.1725(a)/ W.Va. C.S.R. § 36-12-4.20/ W.Va. C.S.R. § 36-18-4.1) prior to running coal on the day of the subject incident and remove them from service if in a hazardous condition (30 C.F.R. §75.363/ 30 C.F.R. §75.512).

In this case, the specific unsafe working conditions that existed prior to Plaintiff's serious injury were not only the recognized hazards of the feeder and belt conveyor themselves, but also the deliberate failure of Plaintiff's immediate supervisor (Justin Bourne) to examine these hazards during his own on-shift examination and the pre-shift examination he took part in with the previous shift's section foreman. Such an examination would have required Justin Bourne to remove the feeder and belt conveyor from service until safe to operate, prior to turning it on and running coal on the day of the subject incident.

Mr. Bourne had actual knowledge of these specific unsafe conditions. With a conscious awareness of these specific unsafe working conditions, he still ran the belt conveyor and feeder while the Plaintiff was standing next to it. Mr. Bourne acknowledged that had he let the Plaintiff examine the belt conveyor and feeder before running it, the subject incident would have never occurred. As a result, Plaintiff suffered serious injuries within the meaning of W.Va. Code §23-4-2(d)(2)(B)(v).

22

31861585.1

B.    Defendant's Brief Summary

This civil action stems from an injury Plaintiff sustained at work on May 11, 2021, as he was troubleshooting a problem with a feeder and belt that were being used to transport coal and other material out of Mingo Logan's Mountaineer II mine.

I.    Background Related to the Incident

Plaintiff was employed as an electrician by Mingo Logan. He was a troubleshooter who fixed anything that broke down. Day shift Section Foreman Justin Bourne was Plaintiff's direct supervisor on the section. Plaintiff's injury occurred as he was troubleshooting an issue with a feeder. A feeder is a piece of equipment with a crusher and a conveyor. Coal (and other large material) is dumped into the feeder, where it is broken down so it can travel outside the mine on a rubber belt. A feeder can be moved to different locations, and before May 11, 2021, Plaintiff had been involved in helping position feeders as they got lined up with the belt, and he had worked on the guards that help direct coal onto the beltline so that coal does not spill off onto the mine floor. Plaintiff understood how feeders worked and had done repair work on them. He had also received numerous types of training before the May 11, 2021, incident, including training specific to the feeder as well as hazard training. As of May 2021, Plaintiff considered himself to be a well-trained, competent, safe coal miner.

As a section foreman, Bourne completes pre-shift and on-shift examinations, which include, among other things, checking for gas, proper ventilation, and any hazards like rocks that might fall, and making sure the belt is not rubbing anywhere and that the rollers are "free and clear." While on retreat mining, Bourne would (or he would direct someone else to) make sure the feeder is set properly, the belt is not rubbing, both are running properly, and there is no spillage. Bourne's examinations do not include inspections of machinery. The outgoing shift calls out the

23

pre-shift examination for the incoming shift, and it also informs the incoming section foreman if anything needs to be followed up on. If a section foreman knows of a hazardous condition, that should be reported to the oncoming crew. Before Plaintiff's shift began, Bourne received a pre-shift examination from Mike Ferrell, the Section Foreman on the night shift, and Bourne recorded it on a form designed for that purpose. The pre-shift examination form, which is signed by both Bourne and Ferrell, does not indicate that any sort of hazard involving the feeder had been found.

At the time of Plaintiff's incident, the mine was doing retreat mining on the section. On the night shift immediately before the shift when Plaintiff was injured, Ferrell and his crew were tasked with removing some belt and setting the feeder over the belt so it would dump directly onto the belt. The night crew did not have to do any welding on that shift. Setting up a feeder to dump directly onto the belt, though not an everyday occurrence, is done approximately two to three times per year and is an ordinary practice in retreat mining.

In this case, due to the angles of the adjacent entry and "the way the panel turned," the "feeder could not be set completely overtop of the belt." The position of the feeder was "not ideal"; it was at an angle, which happens at times and has not caused a citation by a government agency. The night crew had the feeder running before the end of the night shift. As Ferrell recalls, at the end of his shift, the section feeder was not ready to run coal only because there were still things to do like "tidying up, cleanup," and checking things like communication lines.

## II. Plaintiff Was Injured While Determining How to Fix the Feeder's Spillage Problem

When Plaintiff arrived at work for his shift on May 11, 2021, he had no specific concerns, and his assignment was simply to deal with issues as they came up. After Bourne arrived on the section, Bourne became aware that there was an issue with spillage due to the "way the feeder was sitting" – that is, instead of feeding all material onto the belt, the feeder would also spill some

24

31861585.1

material onto the floor. Bourne needed Plaintiff to look at the feeder and belt because, while it could run, "it could not run productively" the way it was set up. Therefore, Bourne went and got Plaintiff, whose job was to fix things like the problem they were facing. The feeder was not on at that time. Bourne's sole concern at that time was spillage; he testified that his concern "had nothing to do with safety." Plaintiff recalls that Bourne suggested that Plaintiff could weld a chute to the feeder to stop the spillage.

Plaintiff walked past the feeder and stood next to Bourne in a corner between the feeder and the belt, with the belt running. Plaintiff and Bourne stood about three or four feet apart, with Bourne closer to the feeder. Bourne testified that Plaintiff and he stood in that location because they did not think any incident would occur; normally, that was not "in any kind of line of fire." The only danger of which Plaintiff was aware before his injury was the danger caused by the fact that coal, a combustible material, was on the ground. Plaintiff acknowledges that, as a coal miner, he had the right to stop work if he saw any unsafe condition, including the right to shut the feeder down if he thought it was unsafe.

Once Plaintiff went to look at the feeder and belt, Bourne turned on the feeder at a crawl (slower than normal speed) so they "could see how it was going to spill and what we would need to do to correct that issue." No safety issue prevented Bourne from turning the feeder on to see how it would dump material onto the belt. When Bourne turned on the feeder, he saw it spilling, but he did not see anything bending, and nothing seemed out of the ordinary.

Plaintiff saw right away that material was spilling onto the ground on the opposite side of the belt from where Bourne and he were standing, but neither he nor Bourne knew material was also going underneath the skirt board at the bottom of the feeder. Plaintiff testified he was not there long enough to have any concern about where he was standing aside from thinking the feeder

31861585.1

needed to be shut off. Plaintiff estimates that, less than five minutes after he arrived at the feeder, he was injured. According to Plaintiff, he heard "the belt thumping" and told Bourne that he thought the belt was about to break, and Bourne agreed. Then a piece of metal came out from under the feeder and hit Plaintiff. After the incident, the belt was still running; the skirting had not damaged it.

According to the inspector from the Mine Safety and Health Administration ("MSHA") who investigated the accident, this is what happened:

> The metal rock box that was built at the transfer point, where the head drive was once installed, was modified to allow placement of the feeder. Two main I beams and several metal rails were cut out, and a piece of sheet metal attached to a skirt board tack welded to the structure was installed in its stead. When the feeder began transferring material onto the West 1A belt, the material got under the inby side of the skirt board bending it out, and the weight of the material broke the tack welds causing a structural failure that then swung out and struck a miner on the arm causing an injury.

Bourne; Plaintiff; and Plaintiff's liability expert, Jack Spadaro, have all come to similar conclusions about how the incident occurred, that is, that material got under the skirt board and created pressure that broke it loose. According to Plaintiff, additionally, the feeder was, either directly or indirectly, "pressing down on the belt line" – but neither MSHA nor Spadaro attributed the incident to that.

Based on the incident, MSHA issued a citation under 30 C.F.R. § 75.1725(a), which requires machinery and equipment to "be maintained in safe operating condition" and to remove "equipment in unsafe condition" from service. Notably, that regulation has been found, as a matter of law, to lack the specificity that is statutorily required to support a deliberate intention claim. MSHA noted that the level of negligence was moderate, not high or reckless disregard. The citation indicates that the problem was fixed when a metal chute was installed and the skirt board was

26

soundly welded onto the structure. The MSHA inspector's justification for the citation was that Mingo Logan "had reason to know that the tack welds were not significant enough to withstand the force of the material being dumped onto it[.]"

Regarding the way he was injured, Plaintiff testified that he has never seen that happen and was very surprised that it happened; otherwise, he would have stood somewhere else. When asked if he knew whether Bourne had ever seen anything like that before, Plaintiff testified, "I don't know if anybody in coal mining had ever seen anything like it happen before, honestly." In fact, Jerry Mann, who is now Safety Manager, testified he has no memory of anyone being injured due to a situation involving the feeder or belt. Plaintiff testified that Bourne was standing closer to the danger than Plaintiff was; it could have hit Bourne just as easily, and it was just a fluke that the metal went past Bourne and hit Plaintiff.

### III.    Consequences of the Incident and Plaintiff's Alleged Damages

As a result of the incident, Plaintiff's left arm (ulna) was broken. He was 37 years old at the time. After several procedures, he achieved maximum medical improvement. He alleges that he lacks full range of motion of his left arm, has a weak grip in his left hand, has constant pain in his left arm/wrist, and suffers PTSD and insomnia. He also has anxiety, which triggers IBS and migraines, all of which allegedly impacts his ability to work – but those conditions were all diagnosed before the incident. Doctors disagree over whether he has PTSD and depression. There is evidence that Rice has feigned or exaggerated his symptoms.

Plaintiff has a high school degree, almost two years of college education, and is a trained and experienced welder. Employment is and has been available to him, and he will be qualified for more jobs if he simply gets additional training.

As damages, Plaintiff seeks compensation for lost wages and medical bills, lost household

27

services, and noneconomic damages, which are capped by statute (W. Va. Code § 23-4-2a). Attorneys' fees and punitive damages are not available.

## IV. Theories of Liability and Defense

Plaintiff brought suit under the deliberate intention exception to the broad immunity granted to employers under the Workers' Compensation Act. The elements of the claim are defined by statute, West Virginia Code section 23-4-2(d)(2)(B). Mingo Logan contends that Plaintiff cannot prove the facts he must prove to succeed on his deliberate intention claim.

Mingo Logan further defends on the basis that Plaintiff has failed in his statutory duty to mitigate his past and future lost wages. *See* W. Va. Code § 55-7E-3. Plaintiff could be, and could have been, employed and earning an income (and getting employment benefits) since 2022, and he has the capacity to earn even more money in the future, and yet Plaintiff remains unemployed.

Additionally, Mingo Logan contends that Plaintiff has comparative fault, which would reduce or bar his recovery of damages. *See* W. Va. Code § 55-7-13a, -13b, -13c, -13d; *Looney v. Appalachian Power Co.*, No. CV 3:24-0467, 2026 WL 893182, at *2 n.1 (S.D.W. Va. Apr. 1, 2026) (comparative fault statute applies to deliberate intention claims); *Woodford v. Arch Coal, Inc.*, Civil Action No. 2:21-CV-02, 2022 WL 2961573, at *3, 2022 U.S. Dist. LEXIS 132832, at *7 (N.D.W. Va. July 26, 2022) (same).

Mingo Logan also disputes Plaintiff's claim to certain damages on the basis that some of the injuries he attributes to the accident on May 11, 2021, were not caused by that incident or are not as severe as Plaintiff claims.

Finally, Mingo Logan defends on the basis that it is entitled to an offset of the amount Plaintiff received as his workers' compensation benefit. *See* W. Va. Code § 23-4-2(c).

28

31861585.1

**5.** **Contested Issues of Fact and of Law**

**A.** **Plaintiff's Contested Issues of Fact and of Law**

As set forth in *Plaintiff's Motion for Summary Judgment as to Liability Against Defendant Mingo Logan Coal LLC* and *Memorandum of Law in Support* (Docket Entries #81 and #82), Plaintiff has satisfied each element of his claim for deliberate intent pursuant to West Virginia Code § 23-4-2(d)(2)(B)(i)-(v) [2015] through the following facts, which are contested by the Defendant:

**i.** West Virginia Code § 23-4-2(d)(2)(B)(i): Specific unsafe working conditions existed at Defendant's Mountaineer II Mine when Plaintiff was directed to observe the feeder and belt conveyor on the day of the incident. Plaintiff's immediate supervisor/section foreman, Justin Bourne, was aware that the feeder and belt conveyor needed addressed by an electrician, he was not comfortable with running it and knew it was not in a condition to run, but ran it anyways, while directing the Plaintiff to examine it. Justin Bourne's failure to adequately and properly conduct examinations (pre-shift and/or on-shift) of the feeder and belt (which was expressly established to protect miners from the hazards that existed in and around the operation of the feeder and belt prior to working), created specific unsafe working conditions that presented a high degree of risk and strong probability of serious injury or death. Failure to remove the belt conveyor and feeder from service prior to and while running coal on the day of the incident further posed a high degree of risk and strong probability of serious injury or death.

**ii.** West Virginia Code § 23-4-2(d)(2)(B)(ii): Prior to Plaintiff's incident, Defendant possessed actual knowledge through Justin Bourne, Defendant's section foreman and Plaintiff's immediate supervisor. Charles Michael Ferrell, the prior section foreman, reported to Justin Bourne that the feeder and belt were not ready to run coal on the day of the subject incident. This was corroborated by Eric Plymale, a shuttle car operator. Actual knowledge is further established by Mr. Bourne's acknowledgement that the feeder and belt conveyor should not be run, but he ran it anyways. Mr. Bourne did not want to run the feeder until the Plaintiff came to look at it but turned it on anyways without asking him because "he was the boss."

West Virginia Code § 23-4-2(d)(2)(B)(ii)(I) states, in part, that "actual knowledge may be shown by evidence of intentional and deliberate failure to conduct an inspection audit or assessment required by state or federal statute or regulation and such inspection, audit or assessment is specifically intended to identify each alleged specific unsafe working condition." There is no dispute that the federal and state laws enforced and administered by MSHA and WVOMHST required Defendant's section foreman and Plaintiff's immediate supervisor (Justin Bourne) to conduct pre-shift and on-shift examinations to ensure the feeder and belt were in a safe operating condition prior to running coal on the day of the incident, and to remove them from service if in hazardous condition. In this matter, actual knowledge is also shown by evidence of Justin Bourne's intentional and

29

deliberate failure to properly perform such pre-shift and on-shift examinations. Mr. Bourne deliberately and intentionally ignored the report he received during the pre-shift examination, and deliberately and intentionally failed to conduct his on-shift examination of the belt conveyor and feeder prior to directing his crew to run coal. Additionally, Mr. Bourne starts his on-shift examination around 8:00 a.m. or later. With Plaintiff's incident occurring at 8:00 a.m., it was never possible for Mr. Bourne to examine the feeder and belt to ensure they were set properly before his crew began to run coal on the day of the incident, and therefore, deliberately and intentionally failed to conduct his examination.

Furthermore, documentary evidence establishes actual knowledge of the Defendant as it received a prior citation issued by MSHA pursuant to W.Va. Code § 23-4-2(d)(2)(B)(ii)(III). The MSHA citation issued against Defendant was for an inadequate on-shift examination of a belt conveyor resulting in failure to implement corrective actions. Justin Bourne confirmed that Defendant goes over the citations it receives during the assembly room meetings at the mine.

iii. West Virginia Code § 23-4-2(d)(2)(B)(iii): MSHA issued a citation to the Defendant for failing to maintain the belt conveyor and feeder in a safe operation condition in violation of 30 C.F.R. §75.1725(a). This unsafe condition was to be examined and alleviated during pre-shift and on-shift examinations, and the belt conveyor and feeder was to be removed from service. Additionally, Defendant violated: 30 C.F.R. §75.360/W.Va. Code § 22A-2-13, 30 C.F.R. §75.362/W.Va. Code § 22A-2-14, W.Va. C.S.R. § 36-12-4.20/ W.Va. C.S.R. § 36-18-4.1, 30 C.F.R. §75.363, 30 C.F.R. §75.512, and 30 C.F.R. §75.1722.

iv. West Virginia Code § 23-4-2(d)(2)(B)(iv): Notwithstanding the above, Defendant nevertheless and with a conscious awareness, exposed Plaintiff to the unsafe working conditions that existed on the day of the subject incident. *See Ramey v. Contractor Enterprises, Inc.*, 225 W.Va. 424, 431 (2010)(stating that "in order to establish the existence of intentional exposure in a deliberate intent action there 'must be some evidence that with conscious awareness of the unsafe working condition … an employee was directed to continue working in the same harmful environment.'").

v. Plaintiff has established that he sustained a "serious injury" within the meaning of W.Va. Code §23-4-2(d)(2)(B)(v)(I)(a)-(b).

The parties have filed several motions wherein contested issues of fact and law are addressed. The underlying bases and the supporting authority for those arguments are set forth in the following Motions filed by the Plaintiff:

- *Plaintiff's Motion for Summary Judgment as to Liability Against Defendant Mingo Logan Coal LLC* and *Memorandum of Law in Support* (Docket Entries #81 and #82);

31861585.1

- *Plaintiff's Motion in Limine to Prohibit Evidence or Argument of Comparative Fault of the Plaintiff* (Docket Entry #111);

- *Plaintiff's Motion in Limine to Prohibit Evidence or Argument of Non-Party Fault and/or Empty Chair* (Docket Entry #112);

- *Plaintiff's Motion to Bifurcate Workers Compensation Set-Off and Motion to Exclude Evidence of Workers Compensation Payments from Phase I of the Trial* (Docket Entry #113); and

- *Plaintiff's Omnibus Motions in Limine* (Docket Entry #114)

**B.    Defendant's Contested Issues of Fact and of Law**

As set forth in its summary judgment motion, Defendant states that there are no genuine issues of material fact on liability; accordingly, judgment should be entered in favor of Defendant.

Apart from liability, Defendant identifies the following contested issues of fact:

i.    The parties dispute whether Plaintiff has failed to mitigate his past and future lost wages despite a statutory duty to do so. See W. Va. Code § 55-7E-3.

ii.    The parties dispute whether Plaintiff has comparative fault, which would reduce or bar his recovery of damages.   See W. Va. Code § 55-7-13a, -13b, -13c, -13d; Looney v. Appalachian Power Co., No. CV 3:24-0467, 2026 WL 893182, at *2 n.1 (S.D.W. Va. Apr. 1, 2026) (comparative fault statute applies to deliberate intention claims); Woodford v. Arch Coal, Inc., Civil Action No. 2:21-CV-02, 2022 WL 2961573, at *3, 2022 U.S. Dist. LEXIS 132832, at *7 (N.D.W. Va. July 26, 2022) (same).

iii.    The parties dispute the amount of damages Plaintiff should recover if he is able to prove his claim, and they dispute the extent of his limitations and medical conditions that were directly and proximately caused by the incident at issue in this civil action. See W. Va. Code § 23-4-2(d)(2)(B)(v).

iv.    The parties dispute the amount of the offset that Mingo Logan is entitled to on the basis that Plaintiff received workers' compensation benefits related to his injury. See W. Va. Code § 23-4-2(c).

The Defendant identifies the following issues of law that are contested:

i.    With regard to the third element of Plaintiff's deliberate intention claim, which has to do with whether the condition that caused Plaintiff's injury was a violation of any statute, regulation, rule, or standard, the "applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination." W. Va. Code § 23-4-2(d)(2)(B)(iii)(II)(c). This matter is addressed in Defendant's Motion in Limine No. 5 and

31

31861585.1

in Defendant's Motion in Limine No. 15. Specifically, Mingo Logan contends, based on prior decisions of this Court, that 30 C.F.R. § 75.1725(a) lacks the statutorily-required specificity. Hunt v. Brooks Run Min. Co., LLC, 51 F. Supp. 3d 627, 632 (S.D.W. Va. 2014), aff'd, 610 F. App'x 340 (4th Cir. 2015); Baisden v. Alpha & Omega Coal Co., LLC, No. CIV.A. 2:11-079, 2012 WL 259949, at *12 (S.D.W. Va. Jan. 27, 2012) (Copenhaver, J.); see also Brown v. Appalachian Mining, Inc., 141 F.3d 1157 (4th Cir. 1998) (stating that 30 C.F.R. § 77.404(a), which has identical language as 30 C.F.R. § 75.1725(a) but applies to surface work, "is exactly the kind of general safety provision that the statute itself declares insufficient").

ii. Mingo Logan has filed a motion for summary judgment that has not yet been ruled on.

iii. Plaintiff has filed a motion for summary judgment that has not yet been ruled on.

iv. Mingo Logan has filed motions in limine that present legal questions for decision before trial.

## 6.    Stipulations

### A.    Plaintiff's Stipulations

The Plaintiff proposes the following stipulations for trial and is agreeable to discuss additional stipulations for purposes of conserving time and resources:

- The authenticity and admissibility of all medical records produced during discovery.

- The authenticity and admissibility of all workers' compensation records produced during discovery.

- The amount, authenticity and admissibility of all medical bills produced during discovery.

- The authenticity and admissibility of all documents produced during discovery, including but not limited to:

  - Photographs of James Rice's injury
  - Mine Accident and Injury Report (WVOMHST)
  - Supervisors Initial Report of an Incident (Arch-Mountain Laurel)
  - Mine Accident, Injury and Illness Report (7000-1)
  - Injury Alert (Arch-Mountain Laurel)
  - Notes and photographs of Andrew Bell
  - May 11, 2021, MSHA Citation
  - Diagram of Incident Location (MLC-Core)
  - Relevant portions of Pre-Shift / On-Shift and Daily Reports
  - Relevant portions of MTNL Examinations of Belt Conveyors

32

31861585.1

- Certain documents contained in the FOIA responses received from the WVOMHST and MSHA in this matter; including but not limited to other citations issued to the Defendant by federal and state agencies
- Cutting and Welding Log
- Dispatcher's Log

- The Plaintiff and Defendant's experts are qualified to testify in this matter.

- The authenticity and admissibility of the curriculum vitae and reports of all expert witnesses.

## B.    Defendant's Stipulations

The Defendant proposes the following stipulations for trial:

- Plaintiff was employed as an electrician at Mingo Logan and was working in a mine operated by Mingo Logan at the time his arm was broken on May 11, 2021.

- Justin Bourne was Plaintiff's direct supervisor on May 11, 2021, and directed Plaintiff's work on that date.

- Plaintiff's job at Mingo Logan included troubleshooting and fixing things that broke down or that needed maintenance.

- At Bourne's request, Plaintiff was troubleshooting an issue with spillage at the feeder at the time of his injury on May 11, 2021.

- MSHA issued one citation to Mingo Logan regarding the accident involving Plaintiff, and in this civil action, it is Bates numbered "Mingo Logan – Rice 00040" to "Mingo Logan – Rice 00043."

- The amount Plaintiff received for workers' compensation benefits to compensate him for lost wages in relation to the incident underlying this civil action.

- The amount of workers' compensation benefits paid for Plaintiff's medical bills related to the incident underlying this civil action.

## 7.    Suggestions for the Avoidance of Unnecessary Proof and Cumulative Evidence

### A.    Plaintiff's Suggestions

As set forth in *Plaintiff's Motion for Summary Judgment as to Liability Against Defendant Mingo Logan Coal LLC* and *Memorandum of Law in Support* (Docket Entries #81 and #82), Plaintiff moved for summary judgment on all elements of his deliberate intent claim pursuant to

33

West Virginia Code § 23-4-2(d)(2)(B)(i)-(v) [2015].  One of those requirements that Plaintiff demonstrated was that he suffered a "serious injury" within the meaning of W.Va. Code § 23-4-2(d)(2)(B)(v)(I)(a)-(b).  Defendant did not address that portion of Plaintiff's *Motion for Summary Judgment* in any respect. *See* pg. 14 of Docket Entry #88. Given the evidence presented within Plaintiff's *Motion for Summary Judgment*, a determination that Plaintiff has satisfied the "serious injury" requirement would limit the testimony of medical experts Krista Ulisse, D.O. and Syam B. Stoll, M.D.

### B.    Defendant's Suggestions

The Defendant's motions *in limine* address evidence that should be excluded for various reasons, including because it is irrelevant and thus unnecessary to prove and because it is cumulative and would waste time. The Defendant further suggests that the parties agree to its proposed stipulations, set forth above.

## 8.    Suggestions Concerning Any Need for Adopting Special Procedures

### A.    Plaintiff's Suggestions

Plaintiff does not believe that any special procedures are required at this time. To the extent applicable, Plaintiff wishes to inquire whether the Court will permit live testimony of witnesses through video conferencing at trial. Also, to the extent applicable, the request set forth in *Plaintiff's Motion to Bifurcate Workers Compensation Set-Off and Motion to Exclude Evidence of Workers Compensation Payments from Phase I of the Trial* (Docket Entry #113) may present a distinct procedure for the Court and parties to consider.

### B.    Defendant's Suggestions

The Defendant has not identified any such need.

31861585.1

**9.     Special Voir Dire Questions**

**A.     Plaintiff's Questions**

Plaintiff requests the following special voir dire questions be asked of the jury panel:

- Have you, or anyone in your immediate family or close friends ever worked in coal mining or the coal mining industry?

- Have you, or anyone in your immediate family or close friend ever worked in a supervisory role? Safety compliance role?

- How many of you work or worked at a job where you had to ensure equipment/machinery was in a safe operating condition before running the equipment/machinery?

- Some folks believe that an injured worker is automatically to blame just because they work in a dangerous job like coal mining. Does anyone here believe that?

- How many of you work or worked at a job where you had to follow federal and state laws?

- How many of you work or worked at a job where federal and state agencies could issue citations?

- Are any of you familiar with the laws and rules that govern coal mines in the State of West Virginia?

- Have any of you heard, read, talked to anyone or seen any news or information about this case?

- Have you ever been sued or been a defendant in a lawsuit?

- How many of you feel that lawsuit abuse exists?

- How many of you think that lawsuit abuse is a problem?

- We've all been hearing a lot lately about legal reform, tort reform, verdicts being too high, frivolous lawsuits, verdicts hurting business, all of those things. We need to know how people feel about those things. How many of you have heard about any of this? How many of you have not?

- Have lawsuits affected the businesses or fields of work you are in or were in?

- How do people at your work or who you socialize with feel about lawsuits?

31861585.1

- Have you or any close family member been employed by any insurance company or agency?

- Have any of you or a member of you family ever worked in the field of evaluating any type of insurance claims?

- Do you or your close family members have a job in the legal profession?

- Is there any member of the jury panel or a member of your family who are close friends, employed in, or have you previously been employed in, the medical or healthcare profession?

- Some people feel that it's a good thing for the results of trials to have an effect on industries like coal mining. Others are uncomfortable about it. Which folks are you closer to?

- Some people are concerned that a jury verdict against a coal mine could mean that jobs will be lost as a result. Do any of you feel that way?

- Would you have any reservation about reaching a verdict against a coal mine if you believed that the coal mine was liable?

- Does anything bother you about how coal mining is performed today?

- How many of you believe it's important that coal mines follow state and federal laws?

- Have you or your close family members had to endure the loss of a family member due to an accident in a coal mine? Serious injury?

- Some people have a little trouble giving money for the pain and suffering as a result of the serious injury. Other people think money for the pain and suffering is okay. How many of you are a little closer to people who think money for pain and suffering is okay? How many of you are closer to the people who would have trouble giving money for pain and suffering someone experienced?

- Have you or any close family member been involved in a lawsuit? If Yes, please explain.

- Do you have any concerns about the effects of lawsuits on the costs of anything you have to pay for?

- How many of you believe it is morally wrong to file a lawsuit? Why?

- Do you believe for religious reasons, or for any other reasons, believe that it is simply wrong to file a lawsuit seeking money damages for injuries?.

31861585.1

- If any of you had been wrongly injured or a family member wrongfully killed, how many of you would file a lawsuit to recover damages?

- Ladies and gentleman, those of you who remain on the jury will be asked to sit through this trial and listen to the evidence and make a decision based upon the facts and the law. These are your rights as a juror: to listen to the facts and understand the law. These things are so important. So, if sometime during the trial you don't hear what a witness says, will each of you be comfortable raising your hand and telling the Judge you did not hear what the witness said? And if after the trial, you are back in the jury room, and there is a disagreement among jurors over what the law is or what it means, will each of you feel comfortable stopping that conversation and asking the bailiff to tell the judge that there is something about the law you need to hear about again?

Plaintiff reserves the right to submit additional *voir dire* to the Court prior to trial.

## B.      Defendant's Questions

Mingo Logan requests the following special voir dire questions:

- Does anyone here think that, if an employee is injured at work, that means that the employer must have done something wrong?

- Does anyone here think that an employer has an absolute responsibility to prevent all injuries to its employees?

- Does anyone here think that, if an employee is injured on the job, the employer should have to pay the employee an amount above and beyond workers' compensation benefits, regardless of the circumstances that caused the injury?

- Does anyone here think that, if a problem is identified with a piece of equipment, that automatically means that the equipment poses a safety concern?

- The defendant in this case is a coal company. Is there anyone here who cannot render a fair and unbiased verdict based solely on the facts and my instructions because the defendant is a coal company?

- The plaintiff is a natural person. The defendant is a corporation. Both natural persons and corporations are equals under the law, in the sense that they are entitled to the same benefits and are held to the same responsibilities. Is there anyone here who would not give fair and conscientious consideration of all the evidence and testimony presented in the case, given that the plaintiff is a natural person and the defendant is a corporation?

- The defendant in this case is Mingo Logan Coal LLC. Have any of you formed an opinion about Mingo Logan Coal LLC that could affect your ability to sit as a neutral

37

juror in this case? In other words, would you have trouble returning a verdict either for or against Mingo Logan Coal LLC based exclusively on the evidence that will be presented at the trial of this matter and the law as I will explain it to you?

- Have you, or has anyone you know, ever been employed by Mingo Logan Coal LLC? If so, do you have an opinion about Mingo Logan Coal LLC? (Answer only "yes" or "no.") If so, ask for individual voir dire regarding the opinion and whether the juror could render a fair and unbiased verdict.

- Have you, or have any of your close friends or relatives, been employed in the coal industry? If so, do you have an opinion about the coal industry that would prevent you from rendering a verdict based exclusively on the evidence presented at trial and the law as I will explain it to you?

- Have you formed any opinion about the way employers, supervisors, and/or managers in the coal industry generally treat their employees, and/or about their efforts to make workplaces safe in the coal industry? (Answer only "yes" or "no.") If so, ask for individual voir dire regarding the opinion and whether the juror could render a fair and unbiased verdict.

- The plaintiff brings an employment-related claim stemming from injuries he sustained while he was employed in the coal industry. Could you render a fair and unbiased verdict based only on the evidence presented in this case and the law as I will explain it to you?

- This case involves a workplace injury. Have any of you, or have any of your relatives or friends, ever been injured at work and thought your employer, or a supervisor or manager, was to blame? If so, would you be able to render a fair and unbiased verdict based only on the evidence presented in this case and on the law as I will instruct you after the close of the evidence?

## 10.    Estimate of the Number of Trial Days Required

### A.    The Parties Estimate

The Parties estimate four (4) to five (5) days will be required for trial.

## 11.    Requested Courtroom Technology

### A.    Plaintiff's Request

Plaintiff requests that the Court provide a television or other screen to be used to show video depositions and potential live testimony of witnesses, as well as a projector and/or "Elmo"

38

31861585.1

to publish documents and exhibits for the jury. Plaintiff states that his counsel will contact appropriate court personnel to discuss a date for testing of anticipated equipment more than seven (7) days prior to trial. Plaintiff will file a "Notice of Certification for Use of Courtroom Technology" pursuant to Local Rule 7.1(a)(9).

### B.    Defendant's Request

Defendant requests that the Court allow for a screen to be used for the showing of video depositions and testimony of witnesses who are not available for in-person testimony at trial. Defendant, like Plaintiff, requests that there be a projector made available to publish documents and exhibits to the jury. Defendant will arrange court personnel to set a time for testing the appropriate equipment at least seven (7) days prior to the trial of this matter and will file a "Notice of Certification for Use of Courtroom Technology" consistent with Local Rule 7.1(a)(9).

### 12.    Any Other Matters Relevant for Pretrial Discussion or Deposition

### A.    Plaintiff's Relevant Matters

Plaintiff is not currently aware of any other relevant matters beyond those currently pending before the Court as contained in the motions filed by the parties. Notwithstanding the information set forth above and the outstanding motions of the parties, the Plaintiff will discuss with the Defendant other matters that are relevant for pretrial discussion or disposition in accordance with Rule 16(c)(2) of the Federal Rules of Civil Procedure prior to submission of this report, which may include, but is not limited to, stipulations and evidentiary depositions.

### B.    Defendant's Relevant Matters

The Defendant identifies no other matters.

31861585.1

**Respectfully Submitted by:**

/s/ Andrew D. Byrd (w/ permission)
Robert B. Warner (WVSB #7905)
Andrew D. Byrd (WVSB #11068)
WARNER LAW OFFICES, PLLC
227 Capitol Street
Post Office Box 3327
Charleston, West Virginia 25333
Telephone: (304) 345-6789
Facsimile: (304) 344-4508
*bwarner@wvpersonalinjury.com*
*abyrd@wvpersonalinjury.com*
**Counsel for Plaintiff**

AND

*/s/ Michael J. Moore*
Michael J. Moore (WV ID #12009)
Kaitlin L.H. Robidoux (WV ID #12342)
Anthony G. Caldera (WV ID #14356)
Michael.Moore@Steptoe-Johnson.com
Kaitlin.Robidoux@Steptoe-Johnson.com
Anthony.Caldera@Steptoe-Johnson.com
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000

Bryan R. Cokeley (WV ID #774)
Bryan.Cokeley@Steptoe-Johnson.com
Chase Tower – 17th Floor
707 Virginia Street, East
Charleston, WV 25301
(304) 353-8000
**Counsel for Defendant**

31861585.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JAMES RICE,

      Plaintiff,

v.

                                          CIVIL ACTION NO.: 2:23-cv-00629
                                          The Honorable Joseph R. Goodwin

MINGO LOGAN COAL, LLC,

      Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August 2026, I filed the foregoing ***"Plaintiff and Defendant's Integrated Pre-Trial Memorandum"*** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

> Robert B. Warner (WVSB #7905)
> Andrew D. Byrd (WVSB #11068)
> WARNER LAW OFFICES, PLLC
> 227 Capitol Street
> Post Office Box 3327
> Charleston, West Virginia 25333
>
> *Counsel for Plaintiff*

          */s/ Michael J. Moore*

          Michael J. Moore (WV ID #12009)

41

31861585.1